**ORDERED.**

Dated: May 13, 2022

_Jason A. Burgess_
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

In re:

Gregory David Miller,   Case No.: 3:21-bk-02093-BAJ
                        Chapter 7

        Debtor.
_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This Case is before the Court upon the United States Trustee's (the "Trustee's") Motion to Dismiss pursuant to 11 U.S.C. § 707(b)(1) and § 707(b)(3) (the "Motion").[1] (Doc. 24). The Court conducted a trial on April 20, 2022. Upon the evidence and the applicable law, the Court makes the following Findings of Fact and Conclusions of Law.

### Findings of Fact

On August 27, 2021, the Debtor filed a voluntary Chapter 7 bankruptcy petition. (Doc. 1). The Debtor is married and has three adult sons. One of the Debtor's sons is permanently disabled, and the Debtor and his spouse will always have the responsibility of caring for him. (Doc. 42, p.

---

[1] The Trustee has stipulated to the fact that the Debtor is eligible to be a Chapter 7 Debtor under 11 U.S.C. § 707(b)(2). (Doc. 42).

1). In addition to the responsibilities the Debtor has in caring for his disabled son, he also has his own health concerns. The Debtor testified that he was diagnosed and treated for skin cancer post-petition, and as a result has incurred significant medical expenses. As of the date of the trial, the Debtor testified that he is cancer free but is still not "out of the woods" and is being closely followed by a physician.

      The Debtor is self-employed and is the owner of two companies, Cooper Benjamin, LLC ("Cooper Benjamin"), and Gregory Miller, Inc. ("GMI"). (Doc. 42, p. 2). The Debtor's decision to file for bankruptcy was precipitated by the foreclosure of a commercial property located in Nebraska, for which Cooper Benjamin was the holding company. Id. The foreclosure resulted in a deficiency judgment of $128,903.82 against the Debtor and Cooper Benjamin.[2] Id.

      Prior to the petition date, Cooper Benjamin and GMI obtained Economic Injury Disaster Loans ("EIDL") from the Small Business Administration ("SBA"). Id. The EIDL loan to Cooper Benjamin was funded in December 2020, in the amount of $32,500.00, and the EIDL loan to GMI was funded in January 2021, in the amount of $106,600.00.[3] (Doc. 42, pp. 2-3).

      The Debtor's main source of income is from GMI which provides business consulting services to chiropractic offices through third party companies. Since September 1, 2021, the Debtor's income has come from GMI in the form of payroll and draws.[4] (Doc. 42, p. 3).

---

[2] Cooper Benjamin has not generated any revenue since the Nebraska property was foreclosed upon. (Doc. 42, p. 2).

[3] The EIDL loans to GMI and Cooper Benjamin do not contain personal guarantees or list a co-debtor. (Doc. 42, pp. 2-3).

[4] Previously, from March 2021 through August 2021, the Debtor and his wife drew regular monthly paychecks from GMI and also made monthly transfers of $1,500.00 from personal savings accounts to pay living expenses. The Debtor testified that he changed his compensation structure on the advice of his accountant based on considerations unrelated to bankruptcy. The Debtor's wife also no longer receives a salary. (Doc. 42, pp. 3-4), (Doc. 42-1), (Doc. 42-2).

As of the petition date, the Debtor had approximately $232,124.69 in unsecured debt, which includes $75,000.00 in non-dischargeable student loan debt.[5] (Doc. 41).

The Debtor's Amended Schedule I lists Debtor's combined monthly income as $9,014.50. (Doc. 41, pp. 3-4). The Debtor's combined monthly income is comprised of $4,445.21 in net monthly income, $4,464.29 in draws from GMI, and a $105.00 cell phone reimbursement from his non-disabled adult son who still resides at the Debtor's home. Id. The Debtor's Amended Schedule J lists monthly expenses in the amount of $9,000.98. (Doc. 41, pp. 5-6). The Debtor therefore claims that his monthly disposable income totals only $13.52. However, the Trustee's calculations of the Debtor's combined monthly income and expenses vary significantly. As illustrated in the Section 707(b)(3) Comparative Chart (the "Comparative Chart"), the Trustee lists the Debtor's combined monthly income as $9,698.13, and the Debtor's average monthly expenses as $8,086.56. (Doc. 42-3). Based on these figures, the Trustee asserts the Debtor has $1,611.57 in monthly disposable income. Id.

The primary difference between the Debtor's and the Trustee's combined monthly income calculations relates to how the business draws are categorized. The Debtor lists the income he received from monthly draws on his business as $4,464.29, whereas the Trustee calculates the amount to be $5,102.92. Id. The $638.63 discrepancy is attributable to the Debtor's decision to treat this amount, not as income, but as a special circumstance because the Debtor used this portion of the monthly draw to pay for his cancer treatments. Notably, the monthly draws the Debtor took from GMI were funded from the EIDL loan, which GMI will have to repay.[6]

---

[5] Although the Debtor was not making monthly payments on his student loan debt as of the petition date, he anticipates that he will need to resume making payments within the next year. (Doc. 42, p. 5).

[6] GMI will have to start repaying the EIDL loan around the end of December 2022, and the anticipated monthly payment is $520.00. (Doc. 42, p. 2).

3

The Comparative Chart also reflects a discrepancy of approximately $915.00 between the Debtor's and the Trustee's allowances for average monthly expenses. Id. The Debtor lists $9,000.98 in average monthly expenses, whereas the Trustee allows for only $8,086.56 in monthly expenses. Id. The main difference is attributable to the expenses the Debtor lists for an anticipated vehicle payment of $500.00, and a car insurance payment of approximately $200.00.[7] The Trustee maintains that because the Debtor will be surrendering his current vehicle, there should be no expense allotted for either a vehicle payment or for car insurance.[8] In response, the Debtor testified that although he plans to surrender his current vehicle because of the high monthly payment,[9] he will still need a reliable vehicle for work, which includes out of state travel. The Debtor also testified that his family needs more than one vehicle because his wife cares for their adult disabled son and is responsible for his transportation.

The Debtor's living expenses have also increased since the filing of the petition. The Debtor's mortgage payment has increased from $2,605.06 to $2,728.92, for a total of $123.86 per month. (Doc. 42, p. 5). The Debtor also testified that his transportation expenses have increased by $50.00 a month due to the rising cost of gasoline. The Trustee, however, objects to this small increase in the Debtor's transportation expenses on the basis that it is not supported.[10]

The Trustee also objects to the $125.00 monthly expense the Debtor allots for palm tree trimming. In response to the Trustee's objection, the Debtor testified that his Homeowner's

---

[7] The Debtor maintains that allotting $500.00 a month for a vehicle payment is a reasonable amount given the price of vehicles in today's economy, along with the interest rate that he will likely qualify for.

[8] The Trustee also notes that the Debtor's vehicle expense has historically been paid for by GMI.

[9] The Debtor's monthly payment on his 2020 GMC Sierra is $966.85. (Doc. 42, p. 5). In addition to surrendering the 2020 GMC Sierra, the Debtor will also surrender his 2019 CanAm Spyder motorcycle, which has a monthly payment of $425.38.

[10] The Trustee also objects to an approximately $20.00 discrepancy in what the Debtor claims for his monthly health insurance premiums.

Association ("HOA") requires that the palm trees in his yard be trimmed, and that he has attempted to mitigate the cost by negotiating with the HOA to have the palm trees trimmed only once per year.[11]

### Conclusions of Law

"The principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor.'" Marrama v. Citizens Bank of Mass., 549 U.S. 365, 367 (2007). "In enacting the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ('BAPCPA'), Congress made sweeping changes to the Bankruptcy Code to address perceived abuses of the bankruptcy system and to ensure that debtors with the ability to repay their debts do so." In re Norwood–Hill, 403 B.R. 905, 907-908 (Bankr. M.D. Fla. 2009). "In a Chapter 7 proceeding, an individual debtor receives an immediate unconditional discharge of personal liabilities for debts in exchange for the liquidation of all non-exempt assets." Schultz v. U.S., 529 F.3d 343, 346 (6th Cir. 2008). It is well-established, however, that a debtor does not have a constitutionally protected right to receive a discharge in bankruptcy. In re Jacob, 447 B.R. 535, 538 (Bankr. N.D. Ohio 2010) (citing Grogan v. Garner, 498 U.S. 279, 286 (1991)); see also In re Egebjerg, 574 F.3d 1045, 1048 (9th Cir. 2009) ("There is now no presumption favoring Chapter 7 relief, but an emphasis on repaying creditors as much as possible."). Discharge "is, instead, a legislatively created benefit that Congress may withhold at its discretion." In re Jacob, 447 B.R. at 538.

"To that end, Congress has prescribed conditions under which a debtor's bankruptcy case must be dismissed." Id. Specifically, § 707(b)(1) provides that a court may dismiss a Chapter 7 case filed by an individual whose debts are primarily consumer debts if it finds that the granting

---

[11] The Debtor also testified that the seemingly high cost of trimming the palm trees is attributable to the fact that the job has to be performed by skilled workers who are capable of physically scaling the trees.

of relief would be an abuse of the provisions of Chapter 7.  In this Case, the Trustee is not asserting that the presumption of abuse arises under § 707(b)(2), also known as the "means test."  Instead, the Trustee is proceeding under § 707(b)(3) which provides: "In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in paragraph (2)(A)(i) does not arise or is rebutted, the court shall consider [whether] (B) the totality of the circumstances ... of the debtor's financial situation demonstrates abuse." 11 U.S.C. § 707.

As the presumption of abuse does not arise in this case, the Trustee bears the burden of proving that the totality of the circumstances, as to the Debtor's financial situation, constitutes abuse.  In re Norwood-Hill, 403 B.R. at 912 (Bankr. M.D. Fla. 2009); In re Walker, 383 B.R. 830, 836 (Bankr. N.D. Ga. 2008) ("[T]he U.S. Trustee is required to come forth with the evidence to persuade the Court that relief would be an abuse.").

"A debtor's ability to pay, as measured by what he could pay in a hypothetical 13 case, is the primary but not conclusive factor a court must consider in a § 707(b)(3)(B) analysis."  In re Hernandez, No. 3:21-BK-624-JAF, 2022 WL 150846, at *3 (Bankr. M.D. Fla. Jan. 14, 2022); see also Norwood-Hill, 403 B.R. at 912.  Therefore, the ability to pay, standing alone, is not sufficient to warrant dismissal.  In re Degross, 272 B.R. 309, 313 (Bankr. M.D. Fla. 2001)).  As Judge Funk has previously recognized, "[t]he better reasoned analysis is one which considers a debtor's ability to pay along with other circumstances."  Hernandez, 2022 WL 150846, at *3; see also In re Degross, 272 B.R. at 313.  Therefore, the Court will also look at the following factors to determine whether they weigh against or in favor of dismissal: 1) whether unforeseen or catastrophic events such as sudden illness, disability, or unemployment propelled the debtor into bankruptcy; 2) whether the debtor's standard of living has substantially improved as a result of the bankruptcy

filing or essentially remained the same; 3) the debtor's age, health, dependents, and other family responsibilities; 4) the debtor's eligibility for Chapter 13 relief and whether creditors would receive a meaningful distribution in a Chapter 13 case; 5) the age of the debts for which the debtor seeks a discharge and the period over which they were incurred; 6) whether the debtor incurred cash advances and made consumer purchases far in excess of the ability to repay; 7) whether the debtor made any payments toward the debts or attempted to negotiate with creditors; and 8) the accuracy of the debtor's schedules and statement of current income and expenses.  Norwood-Hill, 403 B.R. at 912.

The Court will first consider the Debtor's ability to pay.  As reflected on the Comparative Chart, the Debtor asserts that he has $9,014.50 of combined monthly household income, whereas the Trustee calculates the Debtor's combined monthly household income to be $9,698.13.  (Doc. 42-3).  The primary difference between the Debtor's and the Trustee's combined monthly income calculations is the manner in which the Debtor categorized the business draws from GMI.  The Debtor lists the amount of income he received from the monthly draws to be $4,464.29, whereas the Trustee calculates the amount to be $5,102.92.  Id.  The $638.63 discrepancy is attributable to the Debtor's decision to treat this amount, not as income, but as a special circumstance because the Debtor used this portion of the monthly draws to pay for his cancer treatments.  Further, the monthly draws the Debtor took from GMI were funded from the EIDL loan, which GMI will have to repay.  The Court finds the Debtor's decision to categorize this as a special circumstance to be appropriate, and the amount of $638.63 will not be included as part of the Debtor's combined monthly household income. Therefore, the Court finds the Debtor has $9,014.50 in combined monthly household income.[12]

---

[12] The remaining discrepancy of $45.00 is attributable to the reimbursement amount the Debtor receives from his non-disabled son for the use of a cell phone.  The Debtor lists a reimbursement amount of $105.00, and the Trustee lists a

The Comparative Chart also reflects a discrepancy between the Debtor's and the Trustee's allowances for average monthly expenses in the amount of approximately $915.00. Id. The Debtor lists $9,000.98 in average monthly expenses, whereas the Trustee allows for only $8,086.56 in monthly expenses. Id. The main difference is attributable to the expenses the Debtor lists for an anticipated vehicle payment in the amount of $500.00, along with a car insurance payment of approximately $200.00. The Trustee asserts that because the Debtor will be surrendering his current vehicle, that there should be no expense allotted for either a second vehicle payment or a car insurance payment. The Trustee also points out that the Debtor's vehicle expenses have historically been paid for by the Debtor's business. In response, the Debtor testified that although he plans to surrender his current vehicle because of the high monthly payment of $966.85 he will still need a vehicle. Specifically, the Debtor testified that he and his wife are not able to share a vehicle because he needs a vehicle for work, which includes out of state travel, and his wife needs her own vehicle because she cares for their adult disabled son. The Debtor maintains that allotting $500.00 a month for a vehicle payment is a reasonable amount given the price of vehicles in today's economy, along with the interest rate for which he will likely qualify. Based on the Debtor's testimony, the Court finds that the Debtor needs a reliable vehicle for work, and that a vehicle payment of $500.00, and an insurance payment of approximately $200.00, is reasonable.

The Trustee also asserts that the Debtor's $125.00 monthly expense for the palm trees to be trimmed in his yard is discretionary and should not be allowed. In response, the Debtor testified that the trimming of the palm trees is required by his neighborhood's HOA, and that he has attempted to mitigate the cost by negotiating with the HOA to have the palm trees trimmed only once per year. The Court finds this expense to be unusual. However, the Court is satisfied with

---

reimbursement amount of $150.00. The Debtor testified that he currently receives $105.00 from his son as reimbursement for the cell phone, and the Court finds his testimony to be credible.

the Debtor's testimony that the HOA requires the palm trees to be trimmed, that the Debtor has attempted to mitigate the cost, and that the job needs to be performed by skilled workers. Therefore, based on these considerations, the Court will allow the expense.

Since the petition date, the Debtor's living expenses have also increased. The Debtor's mortgage payment has increased from $2,605.06 to $2,728.92, for a total of $123.86 per month. Additionally, the Debtor testified that his transportation expenses increased by $50.00 a month due to the rising cost of gasoline prices. The Trustee, however, maintains that this small increase of $50.00 is not supported. The Court disagrees. It is well documented that the entire country has been grappling with surging rates of inflation across a broad spectrum of areas from the housing market to the cost of gasoline and groceries. The Court therefore finds the Debtor's increase of $50.00 for transportation expenses to be reasonable given the current financial atmosphere.[13]

For these reasons, the Court will utilize the Debtor's calculations on the Comparative Chart as to his combined monthly income and monthly expenses.[14] With a combined monthly income of $9,014.50, and monthly expenses of $9,000.98, the Debtor is left with less than $15.00 in monthly household *net* income. Based on these figures, the Court finds the Debtor does not have the ability to fund a Chapter 13 plan of reorganization.

Alternatively, even *if* the Court could find that the Debtor was able to pay a small dividend to his creditors, there are factors present which weigh against dismissal. First, although the Debtor

---

[13] In considering the totality of the circumstances under § 707(b)(3), another court in this division recently addressed the issue of a debtor's increased living expenses due to the surging rates of inflation. Initially, the Court found that granting the debtor a Chapter 7 discharge would constitute an abuse under § 707(b)(3). In re Chambers, No. 3:21-BK-1301-JAF, 2022 WL 828301, at *2 (Bankr. M.D. Fla. Mar. 18, 2022). The debtor subsequently filed a motion for reconsideration, which detailed his increased living expenses and the resulting impact those expenses had on his disposable income. The court set the matter for hearing and issued an oral ruling at the conclusion of the hearing. In granting the debtor's motion for reconsideration, the court recognized the current state of the economy and specifically considered how the debtor's increased living expenses would affect the distribution to unsecured creditors in a hypothetical chapter 13 plan. (Case No.: 3:21-bk-01301-JAF, Doc. 39).

[14] The Court also accepts the Debtor's testimony that his monthly health insurance premium is $559.51.

9

was not propelled into bankruptcy by a catastrophic event such as a sudden illness or disability, the foreclosure of the Nebraska commercial property, which resulted in a deficiency judgment of $128,903.82 against the Debtor and Cooper Benjamin, precipitated the Debtor's need to file the case. Next, the evidence does not reflect that the Debtor's standard of living has improved since the filing of the case, which is shown in part by the fact that the Debtor is surrendering his truck and motorcycle. Notably, the Court also considers the Debtor's health and family responsibilities. The Debtor testified that he was diagnosed and treated for skin cancer post-petition, and as a result has incurred significant medical expenses. Although the Debtor testified that as of the date of the trial he is cancer free, he also testified that he is still not "out of the woods" and is being closely followed by his physician. In addition to the Debtor's health concerns and resulting medical bills, the Debtor also has the responsibility of supporting his adult disabled son whom he and his wife will always have to care for. Based on the Debtor's ongoing health concerns, and the financial responsibility he bears in caring for his son, the Court affords this factor a good deal of weight.

Next, although the Debtor is admittedly eligible for Chapter 13 relief, the Court finds that there would not be a meaningful distribution to unsecured creditors in a Chapter 13 case. The Debtor's Schedule E/F lists $232,124.69 in unsecured claims. (Doc. 9). Therefore, given the sizeable amount the Debtor owes in unsecured claims, even *if* the Court were to slightly reduce the amount that the Debtor will likely have to pay towards a new monthly vehicle and insurance payment, as well as disallow the palm tree trimming expense and the Debtor's increased transportation expenses, there still would not be enough disposable income left over to result in a

meaningful distribution in a Chapter 13 case.[15] The Court therefore finds that the factors discussed all militate against dismissal of the Debtor's case.[16]

### Conclusion

For the reasons stated above, the Court finds that the Trustee did not prove that a totality of the Debtor's financial circumstances constitutes abuse. Specifically, the Court finds that based on the Debtor's monthly household income and expenses, the Debtor does not have the ability to fund a Chapter 13 plan of reorganization. Additionally, even *if* the Court could find the Debtor was able to pay a small dividend to his unsecured creditors, there are several factors which militate against dismissal. Therefore, the Court will deny the Trustee's Motion to Dismiss under § 707(b)(3). The Court will enter a separate order consistent with these Findings of Fact and Conclusions of Law.

Attorney Kevin Paysinger is directed to serve a copy of this order on interested parties who do not receive service by CM/ECF and file a proof of service within three days of entry of this order.

---

[15] Notably, the small amount of disposable income available to unsecured creditors in such a scenario would further be reduced by Chapter 13 administrative costs and attorney's fees. The Debtor also anticipates that he will have to resume making payments on his student loan debt of approximately $75,000.00, which will further erode any disposable income he may have to contribute towards a hypothetical Chapter 13 plan.

[16] The factors discussed are those to which the Court affords the most weight under the facts and circumstances of the Debtor's case. Any factors not discussed are either not relevant or do not carry substantial weight in the Court's determination. Also, despite the Trustee's argument to the contrary, the Court does not find that the Debtor engaged in behavior that could be construed to reflect an indifference to his creditors.